**In re the ROMAN CATHOLIC BISH-OP OF SAN DIEGO, a California corporation sole, Debtor.**

**No. 07–00939–A11.**

United States Bankruptcy Court, S.D. California.

Aug. 24, 2007.

Gerald P. Kennedy, Geraldine A. Valdez, Procopio, Cory, Hargreaves and Savitch, Laura S. Taylor, Sheppard, Mullin, Richter & Hampton, San Diego, CA, Kasey C. Nye, Lori L. Winkelman, Susan G. Boswell, Quarles & Brady, LLP, Tucson, AZ, for Debtor.

The Roman Catholic Bishop of San Diego, pro se.

Bishop/Diocese of San Bernardino, pro se.

Tiffany L. Carroll, Office of the United States Trustee, San Diego, CA, for U.S. Trustee.

## MEMORANDUM DECISION

LOUISE DeCARL ADLER, Bankruptcy Judge.

### I.

### INTRODUCTION

The issue before this Court is whether to remand 42 of the approximately 127 removed child sexual abuse adversary proceedings to the state court pursuant to 28 U.S.C. § 1452(b). The Roman Catholic Bishop of San Diego ("RCBSD" or "Debtor") removed all of the sexual abuse actions pending against it from the state court to the bankruptcy court after it filed its chapter 11 bankruptcy petition.[1]

The Court established an omnibus procedure for addressing motions to remand. Hearings on motions for remand were scheduled only for those actions against

---

1. The Debtor removed 127 of the actions to this Court pursuant to 28 U.S.C. § 1452(a). The sexual abuse case known as *Melodie H.* was previously removed to the United States District Court for the Southern District of California based upon diversity jurisdiction.

the Debtor that were ready for trial at the time of bankruptcy, or had been released prepetition by the state court coordination judge for all purposes, including trial.[2] The OCC, at the Court's request, has taken the lead in coordinating the presentation of the plaintiffs' evidence and filed an omnibus memorandum of points and authorities in support of the motions in the main bankruptcy case.[3] The Debtor and others who are aligned with the Debtor have filed an omnibus opposition and/or joined in the Debtor's omnibus opposition to the motions. For the reasons more fully set forth below, the Court grants the motions.

## II.

### FACTUAL BACKGROUND

The Debtor filed its chapter 11 bankruptcy petition on February 27, 2007. The filing was on the eve of trial of several of the approximately 127 child sexual abuse actions pending against it. Specifically, trial in the *Rister* case was set to commence on February 28, 2007, and trial in the *Mary Ann M.* case was set to follow immediately thereafter. Trial in the *Michael S.* case was set for April 3, 2007, and trial in the *John Roe* case was set for June 1, 2007.

The Debtor explained that it filed chapter 11 to stay prosecution of the actions so that it could "fairly, justly and equitably compensate" the victims and bring healing to those affected by the past acts of sexual abuse by clergy or others associated with RCBSD "without compromising RCBSD's stewardship and its mission and ministry to the Catholic faith community of parishes, parishioners, religious workers, volunteers and students in the Diocese."[4] On March 28, 2007, the Debtor filed a disclosure statement and plan of reorganization which pays the victims from a $95 million fund.[5] There is no hearing scheduled on the disclosure statement or plan. The claims bar date is February 27, 2008.[6]

The evidence in support of the 42 motions demonstrates: These actions are part of statewide coordinated proceedings established to handle the more than 1,000 sexual abuse lawsuits pending against the Debtor and other Roman Catholic Dioceses within the State of California. The Debtor petitioned for inclusion in the coordinated proceedings in May 2003.

Three coordinated proceedings were established (known as Clergy I, Clergy II and Clergy III). The actions against the Debtor were part of Clergy II. The purpose of the coordinated proceedings is to facilitate the efficient and fair handling and resolution of the sexual abuse cases. There is a single Coordination Judge[7] for the Clergy I and Clergy II cases who has presided over all pre-trial matters for these cases. The Coordination Judge has issued a uniform case management order to govern the proceedings, and has ruled on all pre-trial motions. Division 8 of the California Second District Court of Ap-

---

2. The major parties in interest, including the Debtor, counsel for the various plaintiffs and the Official Committee of Creditors ("OCC") jointly identified the motions that would be heard.

3. Notices of the motions to remand were filed in the adversary proceedings, along with the plaintiffs' supporting declarations.

4. *See* First Day Motion No. 1 filed February 28, 2007, docket entry ("d.e.") 9 at page 4.

Hereinafter, all docket entries refer to the main bankruptcy case unless otherwise specified.

5. *See* d.e. 150.

6. *See* d.e. 1061.

7. Hon. Haley J. Fromholz, Judge, Superior Court, Los Angeles County.

peals is designated to hear all appeals in all Clergy cases.[8]

The Coordination Judge ordered the actions stayed while the parties engaged in mediation. The stay lasted approximately three years. After the parties failed to reach a settlement, the Coordination Judge released a number of the cases from the stay for limited litigation purposes. Thereafter, extensive litigation ensued in the released cases, as outlined in the Zalkin Declaration.[9]

Ultimately, the Coordination Judge fully released a number of San Diego-based cases for trial. After consultation with the plaintiffs and the Debtor, five of the Clergy II cases were selected to serve as "test cases" to proceed to trial in the hope they would spur settlements in the remaining n cases. Within these test cases, there have been three motions for summary judgment/adjudication (one granted), dozens of discovery motions, the imposition of discovery sanctions and scores of depositions.[10] As the test cases approached trial, the Coordination Judge released additional cases for trial, including every case of sexual abuse alleged against Fr. Edward Anthony Rodrique and Fr. Franz Robier.[11]

In addition to the Zalkin Declaration, the moving plaintiffs have filed form declarations in support of their motions to remand setting forth pertinent information concerning the status of their individual cases.[12] According to the plaintiffs' responses, all of the 42 actions have been released from the state court stay. Over half of the 58 plaintiffs in these 42 actions have indicated that discovery is complete or close to complete.[13]

The Debtor's evidence in opposition to the motions consists of four declarations.[14] These declarations state, *inter alia*, that only *five* of the 127 Clergy II actions have any significant discovery taken; that the pre-trial proceedings are not as extensive as Mr. Zalkin represents; that if all 127 cases are remanded, it would take two and one half to three years for discovery to be completed and each of these cases tried; that remanding all 127 of the cases would create a tremendous burden on the state court n system; that it would be inefficient and impractical to remand some of the actions while others remained in the federal system for estimation because it would create dual litigation; and that there is no

---

8. There have been many pending and concluded appeals related to the Clergy cases. *See* Declaration of Irwin M. Zalkin ("Zalkin Declaration") filed July 12, 2007, d.e. 747 at ¶¶ 21.a.-m. (listing the appeals and their subject matter). The Debtor filed evidence objections to the Zalkin Declaration. Except for striking non-material inflammatory language, the evidence objections were overruled.

9. *Id.* at ¶¶ 9–10.

10. *Id.* at ¶ 11.

11. *Id.* at 12.

12. Exhibit 4 to OCC's Evidence Summary, d.e. 798, summarizes the responses for the plaintiffs in these 42 actions. There is a minor discrepancy in the number of actions set for hearing. The moving papers and Summary of Evidence indicate there are 41 actions with 58 plaintiffs; whereas the Reply correctly indicates there are 42 actions. The Court does not know which action/plaintiff(s) have been omitted from Ex. 4, but it is non-material to the ruling on these motions.

13. *Id.*

14. The Declaration of J.E. Holmes III ("Holmes Declaration"); the Declaration of Maria C. Roberts ("Roberts Declaration"); the Declaration of Susan L. Oliver ("Oliver Declaration"); the Declaration of Dave Carothers ("Carothers Declaration"); and the Declaration of Karen F. Landers ("Landers Declaration"). *See* d.e. 888. Additionally, the Diocese of San Bernadino filed the Declaration of Wilfrid C. Lemann in support of its omnibus opposition to the motions, d.e. 886.

basis for plaintiffs to believe there would be group trials in the state court.[15]

The Debtor indicates that if the parties remain unable to reach a settlement, the district court must estimate the claims pursuant to 11 U.S.C. § 502(c).[16] It asserts the only efficient way to resolve the value of the 127 Clergy II cases is to estimate the value of these claims for distribution. The district court would have to try these cases by jury trial only "as a last resort."

Finally, although the information in the declarations is sparse, the Debtor also contends that its federal constitutional defenses are unsettled and complex; whereas the state law claims are "straightforward."[17] It argues that remand is not appropriate where (as purportedly here) the litigation involves serious constitutional concerns.[18]

### III.

### ANALYSIS

As a preliminary matter, the Court wishes to dispose of arguments which cloud the correct remand analysis. Both the moving parties and the Debtor have argued in favor of, and against, applying the abstention doctrines in 28 U.S.C.

§§ 1334(c)(1) and (c)(2) to send these actions back to the state court.

The Debtor argues that 28 U.S.C. § 157(b)(4) directs that personal injury and wrongful death claims shall not be subject to the mandatory abstention provisions of 28 U.S.C. § 1334(c)(2). Further, it argues the prohibition against mandatory abstention in 28 U.S.C. § 157(b)(4) means a court can exercise *discretionary* abstention pursuant to 28 U.S.C. § 1334(c)(1) only in "exceptional circumstances."[19]

■ The Court agrees it cannot send these actions back to the state court based upon abstention. In addition to the express mandate against mandatory abstention in 28 U.S.C. § 157(b)(4), on two occasions the Ninth Circuit has held the abstention doctrine is inapplicable if there is no parallel proceeding in the state court. *In re Lazar*, 237 F.3d 967, 981–82 (9th Cir.2001); *Security Farms v. International Brotherhood of Teamsters*, 124 F.3d 999, 1009–1010 (9th Cir.1997). The Debtor's removal of these actions from the state court means there is no longer a parallel state court proceeding. Accordingly, as a matter of law, abstention is inapplicable.

---

15. *See* Carothers Declaration. Except for the Roberts Declaration, all of the declarations are substantially the same. Additionally, the Roberts Declaration attacks the credibility of Mr. Zalkin. The Declarations filed in support of the Omnibus Reply amply responded to Ms. Roberts' accusations.

16. The Debtor's proposed motion to estimate contingent and unliquidated personal injury claims is attached as an exhibit to its motion to withdraw reference of the adversary proceedings, d.e. 790. The district court heard this motion to withdraw reference on August 17, 2007. By order entered August 20, 2007, it denied the motion and ordered that the Debtor *shall not file* the motion to estimate until after November 26, 2007, at which time the court will review the progress of the bank-

ruptcy case and consider whether, based upon the events that have taken place, withdrawal of the reference and estimation of the claims might then be appropriate. *See* Order Denying Debtor's Motion to Withdraw Reference at page 8, U.S.D.C. Case No. 07cv1355–IEG(RBB). Indeed, the motion to estimate is premature since the claims bar date has not yet passed. A court cannot feasibly estimate claims until the bar date has passed and the universe of claims is known.

17. Debtor's Omnibus Opposition at pages 16–17, d.e. 888.

18. *Id.* at 16–17 and 21.

19. *Id.* at 7.

■ A bankruptcy court's power to remand is provided in 28 U.S.C. § 1452(b). This section provides that a court to which an action is removed may remand the action on "any equitable ground." The "any equitable ground" standard is an unusually broad grant of authority; it subsumes and reaches beyond all of the reasons for remand under the nonbankruptcy removal statutes. *In re McCarthy*, 230 B.R. 414, 417 (9th Cir.BAP1999).

Notwithstanding, the Debtor asserts a court can remand only in "exceptional circumstances." [20] The Debtor's argument is flawed because it relies upon cases that applied 28 U.S.C. § 157(b)(4) and 28 U.S.C. §§ 1334(c)(1) and (c)(2) to support this conclusion. *See e.g. Beck v. Victor Equipment Co., Inc.*, 277 B.R. 179, 180–181 (S.D.N.Y.2002); *Matter of Chicago, Milwaukee, St. Paul & Pacific R. Co.*, 6 F.3d 1184, 1189 (7th Cir.1993); *In re Pan American Corp.*, 950 F.2d 839, 845 (2nd Cir.1991). All cases cited by the Debtor involved abstention, and not a motion to remand a removed case pursuant to 28 U.S.C. § 1452(b).[21] This Court has already indicated 28 U.S.C. § 157(b)(4), and 28 U.S.C. §§ 1334(c)(1) and (c)(2) are inapplicable to the remand issue.

The Court rejects the Debtor's "exceptional circumstances" argument. The Court is persuaded its discretion is much broader than the Debtor urges. *See McCarthy*, 230 B.R. at 417–18 (indicating a bankruptcy court's exercise of discretion to remand need only be supported by "any plausible basis" to be affirmed on appeal).

Further, even if the broad grant of discretion were fettered by "exceptional circumstances," clearly this tsunami of child sexual abuse cases against Roman Catholic clergy would qualify as "exceptional."

■ The "any equitable ground" standard is not statutorily defined. Accordingly, case law has imported the "factors" governing discretionary abstention to assist with the remand decision. *See In re Enron Corp.*, 296 B.R. 505, 508–9 (C.D.Cal.2003)(importing the discretionary abstention factors into the remand analysis and affirming the bankruptcy court's remand to state court of two of the over 100 securities actions filed nationwide instead of transferring venue to the New York bankruptcy court). The imported factors are:

(1) the effect or lack thereof on the efficient administration of the estate if the Court recommends [remand or] abstention; (2) extent to which state law issues predominate over bankruptcy issues; (3) difficult or unsettled nature of applicable law; (4) presence of related proceeding commenced in state court or other nonbankruptcy proceeding; (5) jurisdictional basis, if any, other than § 1334; (6) degree of relatedness or remoteness of proceeding to main bankruptcy case; (7) the substance rather than the form of an asserted core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden on the bankruptcy

---

**20.** *Id.* at 11–12.

**21.** *Beck* is the only case that purports to involve a motion to remand. However, a review of the case reflects the plaintiff actually moved for *abstention* "pursuant to 28 U.S.C. § 1334(c)." *Beck*, 277 B.R. at 180. The entire analysis focuses on § 157(b)(4) and §§ 1334(c)(1) and (c)(2). Relying upon § 157(b)(4), the court indicated that "discre-

tionary remand" should rarely be invoked. However, it is obvious the court was referring to abstention, as it cited to "abstention under 28 U.S.C. § 1334(c)(1)" in discussing this point. *Id.* at 181. The court provided no further analysis of its reason for denying the request for discretionary abstention. *Beck* is not persuasive authority because it nowhere addresses remand under the liberal standard in 28 U.S.C. § 1452(b).

court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; (12) the presence in the proceeding of non-debtor parties; (13) comity; and (14) the possibility of prejudice to other parties in the action.

*Enron*, 296 B.R. at 508, n. 2; *see also In re Tucson Estates, Inc.*, 912 F.2d 1162, 1167 (9th Cir.1990)(citing to a Texas bankruptcy case which articulates a similar list). While these factors assist a court's remand decision, they do not control it. The standard remains "any equitable ground."

■ Using the above-listed factors as a guide, the Court finds remand of the 42 actions is appropriate. First, the Court finds that resolution of the sexual abuse lawsuits is central to the administration of the Debtor's bankruptcy case. The lawsuits are the reason the Debtor filed this case. However, the Court is persuaded that, absent a settlement of the claims, prompt resolution of these claims through the bankruptcy process is unlikely.

The Debtor's proposed motion to estimate asks the district court to estimate the victim's claims at zero dollars.[22] Its plan of reorganization offers a more generous $95 million fund to pay these claims, but this proposal would pay plaintiffs an amount far below the historical statewide average. The plaintiffs have made it clear that both proposals are unacceptable.

Moreover, the claims estimation process has not commenced. The claims bar date will not pass until February 27, 2008, at which time the universe of claims will be known. This is the earliest a district court could feasibly begin to estimate the claims. The Debtor's motion to estimate does not articulate how estimation will be expeditiously accomplished except to indicate there will be no jury trials. Claims estimation for distribution purposes in bankruptcy cases is not well developed through case law. It is likely there will be significant disputes concerning how it should be accomplished. The possibility of further appeals is also high since the Debtor's desired process will deprive plaintiffs of their Seventh Amendment right to a jury trial.

Further, the Debtor has not moved forward on its plan of reorganization. Although it represented in oral argument that it will file an amended plan in mid-October 2007, the Debtor has not stated how it will be amended. Unless the proposed payment amount is substantially increased, the Court foresees a lengthy confirmation process.

Additionally, the Court finds that state law issues predominate even though the Debtor has raised federal constitutional law defenses which it characterizes as unsettled and complex. The history of the litigation in the Clergy cases establishes the federal constitutional defenses are neither unsettled nor complex. They have been extensively litigated in the state courts and by the district court (in *Melanie H.*), and rejected by every court that has considered them.[23] In contrast, the

**22.** *See* Debtor's proposed Motion to Estimate at page 2.

**23.** The district court recently affirmed these federal constitutional law defenses are neither unsettled nor complex, stating in its Order Denying Debtor's Motion to Withdraw Reference that:

[T]he Court does not believe resolution of the Debtor's constitutional challenges will require "more than the mere application of well-settled or 'hornbook' non-bankruptcy law." [Citation omitted] Both the state courts and Judge Hayes in the *Melanie H.* case have rejected the Debtor's facial constitutional challenges to SB1779 under the due process, ex post facto, and bill of attainder clauses of the U.S. Constitution. Although the Debtor would like to reopen the litigation of the constitutionality of SB1779,

state law statute of limitations defense remains unsettled and complex.[24]

The Court finds there is no basis for federal jurisdiction other than 28 U.S.C. § 1334. Although the actions are related to the bankruptcy in the sense of fixing liability amounts against the Debtor; they are not related in any way that bears upon the Debtor's day-to-day operation of its religious, educational and charitable missions.

Further, the Court finds these actions involve solely non-core state law claims. It is feasible to remand these 42 actions for liquidation in the state court, but to reserve the bankruptcy issues of claim treatment to the bankruptcy court. The Debtor incorrectly assumes the claims *must be* liquidated through estimation in the federal system.[25] *See In re Dow Corning, Corp.,* 211 B.R. 545, 562–566 and 599–603 (Bankr.E.D.Mich.1997)(denying cross-motions to estimate mass personal injury tort claims in lieu of liquidation through actual trials).

Moreover, the Court rejects the Debtor's argument of state court inefficiency. These actions were part of statewide coordinated proceedings. One panel of appellate judges still hears appeals from all of the Clergy cases. Judge Fromholz remains the Coordination Judge for the Clergy II cases. The Court concludes that the past and future rulings in state court for these 42 cases, and the history of the rulings in prior Clergy cases together with the continuity of procedural rules, makes

prosecution of the 42 actions in the state court more efficient and uniform than in the district court. The fact that settlement discussions are still being conducted by Judge Papas and that *Melanie H.* is pending in the district court does not make the federal court a more efficient forum.

Further, although there is conflicting evidence as to how much discovery remains, the Court is persuaded that much of the discovery will duplicate prior discovery because most of these 42 actions involve serial perpetrators such that discovery and trial preparation in the later cases will be streamlined.[26]

The Court finds the Debtor has overstated burden that remand will have on the state court system. The state court was already handling all of the actions and had already absorbed the workload. Further, the Court is only remanding 42 of the 127 actions at this time. Based upon the history of the Clergy cases statewide, the Court believes that trying (or the possibility of n trying) the first five actions may spur settlements or at the very least, assist in placing a value on the remaining cases not remanded. Judge Papas has indicated his willingness, even after remand, to remain involved in the settlement effort. As such, the Court is not persuaded the burden on the state court will be excessive.

In contrast, the pre-trial management of the actions would be a burden on either the bankruptcy court or the district court.

---

the remaining constitutional issue to be litigated in these adversary actions is whether the statute, as applied, violates the due process clause. The contours of the right to due process are well-established in this area, and the Court does not believe resolution of the "as applied" constitutional challenge will require "material consideration" or "significant interpretation" of the United States Constitution.
Order at 3–4.

**24.** *See* Declarations filed in Support of Omnibus Reply, d.e. 977–979; *see also* Debtor's 27 Supplemental Request for Judicial Notice filed August 22, 2007, d.e. 1071.

**25.** The Debtor made this argument at the hearing.

**26.** *See* Evidence Summary at Ex. 4 (only five plaintiffs responded that their action was *not* against a serial perpetrator).

In the event of trials, it would be enormously burdensome for the district court to try all 127 of the cases. The Debtor appears to propose that a single district court judge would try all 127 cases.

It is likely that the Debtor is forum shopping. The Debtor's plan of reorganization proposes to pay each plaintiff an amount far below the statewide settlement average. It appears the Debtor is hoping for a far better result in the federal forum than the Dioceses have thus far historically achieved in the state court forum.

The Court finds the subject matter of the pending actions (protection of children from sexual predators) is a matter of compelling state interest. The presence of federal·constitutional defenses already unsuccessfully litigated does not cause the federal government to have an equally compelling interest. As such, comity strongly favors the state court forum over the federal court.

Finally, the plaintiffs have requested jury trials. The Court finds that loss of the Seventh Amendment right to a jury trial will cause severe prejudice to the plaintiffs, especially since these cases are intensely fact driven.[27]

The Court concludes the equities overwhelmingly favor remand of the 42 actions to the state court for liquidation through trial (or settlement) rather than claims estimation, or liquidation through trial in the federal court. These cases are remanded for all purposes, including determination of punitive damages if appropriate.

The Debtor has cited *In re Roman Catholic Archbishop of Portland in Oregon*, 338 B.R. 414, 418–19 (Bankr.D.Or. 2006), to argue that this Court must retain the actions that request punitive damages. In *Roman Catholic Archbishop of Portland*, the bankruptcy court retained the actions that requested punitive damages because it reasoned the determination of punitive damages implicates fundamental property of the estate issues which must be decided by the bankruptcy court. *Id.* at 418.

The Court disagrees with *Roman Catholic Archbishop of Portland* on this point. The Court is not persuaded the fact that a state court jury, as part of its determination in awarding punitive damages, may have to pass upon issues of the Debtor's "net worth" requires retention of the actions by the bankruptcy court. Punitive damages is a state law issue and any court that decides this issue would have to apply state law. The judge in *Roman Catholic Archbishop of Portland* recognized the jury's punitive damages determination would *not* be *res judicata* on the bankruptcy court's determination of what constitutes property of the debtor's estate. *Id.* at 419, n. 5. Likewise, this Court will be making its own determination of what constitutes property of the Debtor's bankruptcy estate.

## IV.

## CONCLUSION

28 U.S.C. § 1452(b) vests the Court with broad authority to remand a removed action on "any equitable ground." Because this standard is not defined by statute, case law has imported the equitable "factors" for discretionary abstention to assist the equitable remand analysis. This Memorandum Decision explains why these factors overwhelmingly support remand back to the coordinated state court proceedings.

---

27. Arguably, it would also prejudice the Debtor. Its federal constitutional defense of due process, as applied, is case-by-case fact driven. *See* Carothers Declaration at ¶ 20 ("[e]ach one is unique as to ... whether or not RCBSD had or should have had notice of the alleged abuse.")

Accordingly, the Court exercises its discretion to grant the motions to remand.

This Memorandum Decision is in lieu of Findings of Fact and Conclusions of Law. The Court will be entering its own remand orders concurrently herewith.