**FEDERAL HOME LOAN BANK OF CHICAGO, Plaintiff,**

v.

**BANC OF AMERICA SECURITIES LLC, et al., Defendants.**

No. 10–CV–09105 MRP (MANx).

United States District Court, C.D. California.

March 15, 2011.

Lynn Lincoln Sarko, Derek W. Loeser, Amy Williams–Derry, Elizabeth A. Leland, Seattle, WA, Gary A. Gotto, Keller Rohrback P.L.C., Phoenix, AZ, Michael D. Braun, Braun Law Group, P.C., Los Angeles, CA, for Plaintiff, Federal Home Loan Bank of Chicago.

Susan Hoffman, Heather A. Kabele, Karen Pazzani, Bingham McCutchen LLP, Los Angeles, CA, for JPMorgan Chase & Co., J.P. Morgan Securities Inc., J.P. Morgan Acceptance Corporation I, and JP Morgan Securities Holdings LLC.

Thomas J. Nolan, Jason D. Russell, Skadden, Arps, Slate, Meagher & Flom LLP, Los Angeles, CA, Jay B. Kasner, Christopher P. Malloy, Scott D. Musoff, Skadden, Arps, Slate Meagher & Flom LLP, New York, NY, for Banc of America Securities LLC.

Michael C. Tu, Orrick, Herrington & Sutcliffe LLP, Los Angeles, CA, Joseph J. Frank, Steven J. Fink, Matthew L. Craner, Orrick, Herrington & Sutcliffe LLP, New York, NY, for Barclays Capital Inc.

Richard L. Seabolt, Duane Morris LLP, San Francisco, CA, Brad S. Karp, Charles E. Davidow, Susanna M. Buergel, Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, NY, for Citigroup Financial Products, Inc., Citigroup Global Markets Inc., Citigroup, Inc., and Citigroup Mortgage Loan Trust Inc.

Stephen D. Hibbard, Shearman & Sterling LLP, San Francisco, CA, Adam S. Hakki, Daniel H.R. Laguardia, Shearman & Sterling LLP, New York, NY, for Countrywide Financial Corporation, Countrywide Securities Corporation, CWABS, Inc., CWALT, Inc. and CWMBS, Inc.

R. Alexander Pilmer, David I. Horowitz, Jay L. Bhimani, Kirkland & Ellis LLP, Los Angeles, CA, for RBS Securities, Inc.

Neal A. Potischman, Samantha Harper Knox, Davis Polk & Wardwell LLP, Menlo Park, CA, James P. Rouhandeh, Daniel J. Schwartz, Anna Thea Bridge, Davis Polk & Wardwell LLP, New York, NY, for Morgan Stanley & Co. Incorporated.

George M. Garvey, Michael J. Mongan, Munger, Tolles & Olson LLP, Los Angeles, CA, for Wells Fargo Asset Securities Corporation, Wells Fargo Bank, National Association, and Wells Fargo & Company.

## ORDER RE: PLAINTIFF'S MOTION TO REMAND

MARIANA R. PFAELZER, District Judge.

### I. INTRODUCTION & BACKGROUND

This securities action is brought by Plaintiff Federal Home Loan Bank of Chi-

cago, a federally chartered corporation established by Congress under the Federal Home Loan Bank Act of 1932. Plaintiff claims it purchased over $880 million in Private Label Mortgage Backed Securities, also known as mortgage pass-through certificates ("Certificates"), which are a form of residential mortgage backed securities ("RMBS") issued by private entities. Compl. ¶ 3 (Docket No. 1). The Certificates were issued or underwritten in fifteen separate offerings by twenty different named defendants. Compl. ¶¶ 33–44. Plaintiff alleges that the offering documents relating to the RMBS offerings contained untrue or misleading statements concerning the loans underlying each separate RMBS offering. *See, e.g.,* Compl. ¶ 12. Plaintiff claims it has been injured by the alleged misrepresentations and omissions, and alleges violations of §§ 11, 12(a)(2) and 15 of the Securities Act of 1933, the Illinois Securities Law, the California Corporations Code, the California Civil Code, and common law. Compl. ¶ 1. Plaintiff seeks to rescind its purchase of the Certificates and/or be paid damages for its losses on the Certificates. *See, e.g.,* Compl. ¶¶ 1–2, 12.

On October 15, 2010, Plaintiff filed its Complaint in Los Angeles Superior Court. Notice of Removal (Docket No. 1). On November 24, 2010, the Removing Defendants[1] filed a Notice of Removal in this Court, purporting to remove the claims based upon "related to" bankruptcy jurisdiction under 28 U.S.C. §§ 1334(b), 1452(a), and based upon Plaintiff's status as a federally chartered corporation under 12 U.S.C. § 1432(a). *Id.* The Removing Defendants contend that 12 U.S.C. § 1432(a), which gives Plaintiff the power "to sue and be sued, to complain and to defend, in any court of competent jurisdiction, State or Federal," also confers federal jurisdiction over this lawsuit. The Removing Defendants further contend the instant action is related to the bankruptcy case *In re American Home Mortgage Holdings, Inc.,* No. 07–11047–CSS, 2007 WL 2253169 (Bankr.D. Del. filed Aug. 6, 2007), because the J.P. Morgan Defendants and the Countrywide Defendants have claims against American Home Mortgage Corp. ("American Home") for indemnification and/or contribution arising from claims made against them in this lawsuit. On December 23, 2010, Plaintiff filed the pending motion to remand. Docket No. 70.

For the reasons described below, the Court **GRANTS** the motion to remand. 12 U.S.C. § 1432(a) does not confer federal jurisdiction over this lawsuit. And, although this action is "related to" the American Home bankruptcy case, which gives the Court federal jurisdiction over the matter, the Court nevertheless **GRANTS** an equitable remand.

## A. FACTUAL BACKGROUND

This lawsuit alleges that Defendants misstated the quality of the mortgage loans underlying fifteen offerings of RMBS. Two of the offerings, JPALT 2006–A5 and CHL 2006–HYB3, were backed in part by loans originated by American Home. *See* Pazzani Decl., Ex. 1

---

**1.** The Removing Defendants consist of: J.P. Morgan Acceptance Corporation I; J.P. Morgan Securities Inc.; JPMorgan Securities Holdings LLC, JPMorgan Chase & Co.; Wells Fargo Asset Securities Corp.; Wells Fargo Bank, National Association; Wells Fargo & Company; Morgan Stanley & Co., Incorporated; Barclays Capital Inc.; RBS Securities Inc.; Citigroup Mortgage Loan Trust Inc.; Citigroup Global Markets Inc.; Citigroup Financial Products Inc.; Citigroup Inc.; CWABS, Inc.; CWALT, Inc.; CWMBS, Inc.; Countrywide Securities Corporation; Countrywide Financial Corporation; and Banc of America Securities LLC.

[JP ALT 2006–A5 Prospectus Supplement at S–4]; Meiers Decl., Ex. A [CHL 2006–HYB3 at S–26]. It is unclear to the Court what percentage of the total loans at issue in this case these loans originated by American Home represent. Plaintiff states in its brief that the loans constitute only three percent of the total loans, *see* Reply Brief at 6, but provides no declaration or evidence to show the Court that is the case. Defendants provide the prospectus supplements which show that loans originated by American Home represent 27.95% of the Pool 1 loans in the JP ALT 2006–A5 offering, and 21.44% of Loan Group 2 of the CHL 2006–HYB3 Trust. Pazzani Decl., Ex. 1; Meiers Decl., Ex. A Those percentages refer to just two tranches. The parties do an inadequate job of contextualizing these loans.

In connection with the JPALT 2006–5 transaction, J.P. Morgan Acquisition Corp. purchased certain mortgage loans from American Home, assigned them to J.P. Morgan Acceptance Corporation I ("JPMAC"), which deposited them into JPALT 2006–A5. Pazzani Decl. ¶ 2. On June 28, 2006, JPMAC and American Home entered into an indemnification agreement in which American Home agreed to "indemnify and hold harmless" JPMAC for any losses arising from lawsuits in which plaintiffs alleged that the Prospectus Supplement contained material misstatements or omissions regarding the loans purchased from American Home. Pazzani Decl. ¶ 3; *id.*, Ex. 2 [Indemnification Agreement § 1(a) ]. The agreement further provides that American Home will "reimburse" JPMAC "promptly upon demand for any legal or other expenses reasonably incurred by any of them in connection with investigating or defending or preparing to defend against any such loss, claim, damage, liability or action as such expenses are incurred." Pazzani Decl., Ex. 2. The agreement also allows Ameri-

can Home to "assume the defense" of JPMAC. *Id.* § 1(b).

In connection with the CHL 2006–HYB3 transaction, which is also one of the RMBS offerings in this lawsuit, Countrywide Home Loans ("CHL") purchased loans from American Home, assigned the loans to CWMBS, Inc. and deposited them into CHL 2006–HYB3. Meiers Decl. ¶ 2. CHL purchased these loans from American Home pursuant to a Mortgage Loan Purchase and Interim Servicing Agreement dated November 26, 2003 (the "Purchase Agreement"). *See* Meiers Decl., Ex. B. In Article III of the Purchase Agreement, American Home made numerous representations and warranties to CHL regarding the quality of the loans underlying the 2006–HYB3 offering. *See id.* at 9–18. In Section 3.4 of the Purchase Agreement, American Home explicitly agreed to "defend and indemnify" CHL "and hold it harmless" against:

> any losses, damages, penalties, fines, forfeitures, judgments and any related costs including, without limitation, reasonable and necessary legal fees, resulting from any claim, demand, defense or liability based upon or arising out of any act or omission on the part of the Seller in receiving, processing, funding or servicing any Mortgage Loan, or from any assertion based on, grounded upon or resulting from a breach or alleged breach of any of the Seller's representations and warranties contained in this Article III.

*Id.* at 19. In an amendment to the Purchase Agreement, dated December 16, 2005, American Home agreed to indemnify depositors of Countrywide securitizations, such as CWMBS, Inc., "against any losses . . . legal fees and expenses . . . that any of them may sustain arising out of or based upon" any alleged untrue material fact or omission concerning American Home's

"credit-granting or underwriting criteria," among other things. Meiers Decl., Ex. C at ¶ 9. With respect to the 2006–HYB3 offering only, American Home executed yet another agreement indemnifying CWMBS against "losses, claims, expenses, damages or liabilities to which [it] may become subject, under the 1933 Act or otherwise," including legal expenses, due to alleged misrepresentations or omissions concerning the loans originated by American Home. Meiers Decl., Ex. D at ¶¶ 1, 2.

Defendants contend that the filing of this lawsuit automatically triggered the indemnity obligations of American Home and, therefore, this action will directly impact the assets available for distribution to American Home's creditors. Defendants rely heavily on *Stichting*, a similar case involving RMBS in which the Court recently found federal jurisdiction based upon "related to" bankruptcy jurisdiction under 28 U.S.C. §§ 1334(b), 1452(a). *Stichting Pensioenfonds ABP v. Countrywide Financial Corp.*, No. 10–cv–07275 MRP (MANx), 2010 WL 5559973, at *2 (C.D.Cal. Dec. 29, 2010). For the same reasons the Court found "related to" bankruptcy jurisdiction in *Stichting*, it finds jurisdiction here. This case, however, is distinguishable from *Stichting* in several important ways. It is these distinctions that lead the Court to **GRANT** an equitable remand in the present case.

### B. PROCEDURAL HISTORY

On August 6, 2007, American Home filed a voluntary petition for bankruptcy under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, in the bankruptcy court for the District of Delaware. Notice of Removal ¶ 18; Pazzani Decl. ¶ 4. Defendant JPMAC filed a proof of claim that included claims of future indemnity rights for costs—including legal costs—incurred in connection with the loans underlying JPALT 2006–A5. Pazza-

ni Decl., Ex. 3 [Proof of Claim]. Defendant CHL also filed a proof of claim in the American Home bankruptcy proceedings, which is dated August 21, 2008 and stamped received on August 28, 2008. *See* Meiers Decl., Ex. E [Proof of Claim]. CHL's proof of claim encompassed the Purchase Agreement as well as two other agreements, in which American Home agreed to defend and indemnify CHL and upon which CHL relies for "related to" bankruptcy jurisdiction. *See* Meiers Decl. ¶¶ 4–6; *id.*, Exs. C–E.

In their brief in opposition to remand, Defendants state that on November 25, 2008, American Home filed an Amended Plan of Liquidation ("the Plan"), which was amended on February 18, 2009 and confirmed by the Bankruptcy Court for the District of Delaware on February 23, 2009. Opposition Brief at 9. Defendants cite to Meiers Declaration, Exhibit F, which is an Amended Chapter 11 Plan of Liquidation dated February 18, 2009. There is no pincite to indicate where in the exhibit the Court can verify the information that the first plan was filed on November 25, 2008 and Exhibit F, dated February 18, 2009, cannot establish that the plan was confirmed on February 23, 2009, which is five days in the future. Instead, Defendants cite this Court's opinion in *Stichting* as the authority on this point. Federal Rule of Evidence 201 does not permit a trial court to take judicial notice of any facts found by a court in another judicial proceeding. *Wyatt v. Terhune*, 315 F.3d 1108, 1114 (9th Cir.2003). Thus, the mere fact that the court makes findings of fact in one opinion is not a basis for the same court in another proceeding to take judicial notice of those findings and deem them to be indisputably established for purposes of the pending litigation. *Estate of Reis v. Commissioner*, 87 T.C. 1016, 1028–29, 1986 WL 22049 (1986). Defen-

dants have not established that the Plan has gone into effect. Defendants rely on *Stichting* to establish that American Home's bankruptcy trustee has until November 30, 2011 to hear objections and thereafter will determine whether to allow the indemnity claims to continue. *Stichting* does not find that fact and it does not appear that Exhibit F provides that information either.

## II. DISCUSSION

Defendant contends the Court has two bases for asserting federal jurisdiction: (1) "related to" bankruptcy jurisdiction under 28 U.S.C. §§ 1334(b), 1452(a), and (2) Plaintiff's status as a federally chartered corporation under 12 U.S.C. § 1432(a).

### A. BANKRUPTCY JURISDICTION

The Court must determine whether this securities action is related to the bankruptcy of a non-party, American Home, with which Defendants JPMAC and CHL have indemnification agreements. If the lawsuit is not related, it must be remanded. If it is related, the Court may still remand it for equitable reasons.

### 1. Applicable Law

▮ Bankruptcy jurisdiction is governed principally by statute. The general grant of bankruptcy jurisdiction is contained in 28 U.S.C. § 1334. That provision vests original jurisdiction in the district courts over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." *Id.* § 1334(b).[2] Claims related to bankruptcy cases may be removed to federal court under 28 U.S.C. § 1452. The statute provides, in relevant part: A party may remove any claim or

cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title. 28 U.S.C. § 1452. The strong presumption against removal means the removing party bears the burden of establishing federal jurisdiction and that removal was proper. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992).

▮ With respect to 28 U.S.C. § 1334(b), the statutory grant of "related to" jurisdiction is quite broad. Courts in the Ninth Circuit generally apply the "conceivable effect" test to determine whether an action is related to bankruptcy. *In re Fietz*, 852 F.2d 455, 457 (9th Cir.1988) (adopting the Third Circuit's articulation of the test in *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir.1984)).

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy.* [citations omitted]. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*In re Fietz*, 852 F.2d at 457 (quoting *Pacor, Inc. v. Higgins*, 743 F.2d at 994 (emphasis in *Pacor*)). In *In re Fietz*, the Ninth Circuit made clear it was adopting

---

**2.** In what is a typical arrangement, the Central District of California, by standing order, has delegated to the bankruptcy court all cases in which jurisdiction is premised on section 1334, subject to review by the district court (or, alternatively, by the Bankruptcy Appellate Panel) in accordance with 28 U.S.C. §§ 157, 158. *See* C. D. Cal. General Order No. 266, 266A.

an expansive view of relatedness; even a remote relationship confers "related to" jurisdiction.

■ Once a bankruptcy plan has been confirmed, the Ninth Circuit has curtailed the reach of "related to" jurisdiction to ensure that bankruptcy jurisdiction does not continue indefinitely. *See In re Pegasus Gold Corp.*, 394 F.3d 1189, 1194 (9th Cir.2005) (adopting the Third Circuit's post-confirmation approach as articulated in *In re Resorts Int'l, Inc.*, 372 F.3d 154, 166–67 (3d Cir.2004)). In *In re Resorts Int'l, Inc.*, the Third Circuit explained that "bankruptcy court jurisdiction must be confined within appropriate limits and does not extend indefinitely, particularly after the confirmation of a plan and the closing of a case." 372 F.3d at 165. Thus, when a bankruptcy plan has been confirmed, the Ninth Circuit applies a more stringent "close nexus" test. Under the "close nexus" test, the question is " 'whether there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter.' " *In re Pegasus Gold Corp.*, 394 F.3d at 1194 (quoting *In re Resorts Int'l, Inc.*, 372 F.3d at 166–67). Matters that qualify as having a sufficiently close nexus typically include those that affect "the interpretation, implementation, consummation, execution, or administration of the confirmed plan." *Id.*

Although Defendants have not established that the bankruptcy plan has been confirmed, the Court will nevertheless apply the "close nexus" test because it is a more stringent test. *See Stichting*, 2010 WL 5559973, at *3–4.

### 2. The Court Has Jurisdiction Over This Action Because It Is Related To Bankruptcy.

■ Under the "close nexus" test, matters that qualify as having a sufficiently close nexus typically include those that affect "the interpretation, implementation, consummation, execution, or administration of the confirmed plan." *In re Pegasus Gold Corp.*, 394 F.3d at 1194. CHL's indemnification agreement with American Home protects it against "any losses, damages, penalties, fines, forfeitures, judgments and any related costs including, without limitation, reasonable and necessary legal fees resulting from any claim, demand, defense or liability based upon or arising out of any act or omission on the part of [American Home]." Meiers Decl., Ex. B at 19. The language of this agreement makes clear that American Home's obligation to defend CHL arose immediately upon the filing of this lawsuit. There is therefore no merit to Plaintiff's argument that yet another separate lawsuit would have to proceed—in which CHL gets a judgment regarding American Home's indemnification liability—before the bankruptcy case would be impacted. *See Steel Workers Pension Trust v. Citigroup, Inc.*, 295 B.R. 747, 750, 753 (E.D.Pa.2003) (finding an action is related to the bankruptcy case only when the right to indemnification is clearly established and accrues upon the filing of the civil action).[3] Because, at a minimum, American Home is bound to indemnify CHL for its costs incurred in defending this lawsuit, this action will necessarily affect "the interpretation, implementation, consummation, execution, or administration of the

3. The Court will not address Plaintiff's argument that contractual indemnification clauses are unenforceable because the argument was raised for the first time in its reply brief. *See Sophanthavong v. Palmateer*, 378 F.3d 859, 872 (9th Cir.2004) (noting that allowing a

new argument to be presented in a reply brief is not fair to the opposing party); *Assoc. of Irritated Residents v. C & R Vanderham Dairy*, 435 F.Supp.2d 1078, 1089 (E.D.Cal.2006) ("It is inappropriate to consider arguments raised for the first time in a reply brief").

confirmed plan" of American Home's bankruptcy. Likewise, with respect to American Home's contracts with JPMAC, American Home agreed to reimburse JPMAC for its costs defending actions such as this and even to assume its defense. *See, e.g.,* Pazzani Decl., Ex. 2 § 1(a),(b).

This Court has addressed this precise issue of indemnification of defense costs in this same context of the American Home bankruptcy. *See generally Stichting,* 2010 WL 5559973. Following numerous other district courts, this Court held just months ago that a securities action involving RMBS backed by loans originated by American Home was related to the American Home bankruptcy because a defendant in the action had a contractual claim for indemnification against the debtor and had filed proofs of claim in the American Home bankruptcy proceeding. *Id.* at *5–6. Here, too, because Defendants' claims in the bankruptcy proceeding include claims for reimbursement of fees and expenses incurred in connection with the defense of the securities lawsuit, *see* Pazzani Decl., Ex. 3 ¶ 2; Meiers Decl., Ex. E at 107, their claims are not conditional upon the finding that Defendants are liable to Plaintiff here.

### 3. The Court Remands the Case on Equitable Grounds.

■ 28 U.S.C. § 1452(b) provides that a court to which a claim is removed pursuant to Section 1334 "may remand such claim … on any equitable ground." Because the "any equitable ground" standard is not statutorily defined, case law has imported factors governing discretionary abstention to assist with the remand decision. *In re Roman Catholic Bishop of San Diego,* 374 B.R. 756, 761 (Bankr. S.D.Cal.2007). Ninth Circuit courts consider up to fourteen factors in determining whether to remand a "related to" case on equitable grounds. *Citigroup Inc.,* 296

B.R. at 508. The most comprehensive list of factors include:

(1) the effect or lack thereof on the efficient administration of the estate if the Court recommends [remand or] abstention; (2) extent to which state law issues predominate over bankruptcy issues; (3) difficult or unsettled nature of applicable law; (4) presence of related proceeding commenced in state court or other non-bankruptcy proceeding; (5) jurisdictional basis, if any, other than § 1334; (6) degree of relatedness or remoteness of proceeding to main bankruptcy case; (7) the substance rather than the form of an asserted core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden on the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; (12) the presence in the proceeding of non-debtor parties; (13) comity; and (14) the possibility of prejudice to other parties in the action.

*Id.* at 508 n. 2; *see Hopkins v. Plant Insulation Co.,* 349 B.R. 805, 813 (N.D.Cal. 2006); *Williams v. Shell Oil Co.,* 169 B.R. 684, 692–93 (S.D.Cal.1994). Because Section 1452(b) affords "an unusually broad grant of authority," any one of the relevant factors may provide a sufficient basis for equitable remand. *In re Roman Catholic Bishop of San Diego,* 374 B.R. at 761.

■ All courts that have recently considered removal and remand of substantially similar actions brought by a Federal Home Loan Bank have each remanded because the connection to bankruptcy was attenuated and state law issues predominated. *See, e.g., FHLB Seattle v.*

*Deutsche Bank Sec., Inc.,* 736 F.Supp.2d 1283 (W.D.Wash.2010) (remanding eleven separate actions that had been filed by Federal Home Loan Bank of Seattle in state court against eleven financial institutions); *FHLB Chicago v. Banc of Am. Funding Corp.,* No. 10–7560, 760 F.Supp.2d 807, 2011 WL 151842 (N.D.Ill. Jan.18, 2011) (holding the prospect that a few defendants may be able to invoke "related to" bankruptcy jurisdiction because a tiny percentage of loans were originated by a lender now in bankruptcy "cannot serve as a very small jurisdictional tail that can wag the very large jurisdictional dog of this lawsuit as a whole."); *FHLB San Francisco v. Deutsche Bank Sec., Inc.,* Nos. 10–3039 & 10–3045, 2010 WL 5394742 (N.D.Cal. Dec.20, 2010) (remanding two actions that had been filed by Federal Home Loan Bank of San Francisco against two different financial institutions to state court); *FHLB Pittsburgh v. J.P. Morgan Sec., Inc.,* No. 09–1421, 2009 WL 5178904 (W.D.Pa. Dec.21, 2009) (addressing the jurisdiction created by charter argument only because the defendants abandoned their "related to" bankruptcy grounds).

Here, as the Court stated in Section I.A. *supra,* it is unclear what percentage of the total loans at issue were originated by American Home. Plaintiff claims the number is only a small fraction—three percent. *See* Reply at 2, 6. To be sure, with American Home loans existing in only two tranches of the fifteen offerings at issue, this action has only a remote connection to bankruptcy proceedings. Yet, Defendants argue that the same factors which caused the Court to retain jurisdiction over *Stichting* should cause the Court to retain jurisdiction in this case. The Court disagrees. In *Stichting,* this Court

concluded that lawsuit was a federal securities action at its core, because the bulk of the claims presented were federal claims brought under Sections 11, 12 and 15 of the federal Securities Act of 1933. *See Stichting,* 2010 WL 5559973, at *7. In the present case, Plaintiff raises eleven causes of action, only three of which are federal claims. Thus, the majority of the claims arise under state law.[4]

Also, in *Stichting,* eleven of the fourteen MBS offerings at issue overlapped with offerings at issue in *Maine State Retirement System v. Countrywide Financial Corporation,* No. 10–cv–00302 MRP (MANx) (C.D.Cal.), a case already pending on the Court's docket. Here, only two of the offerings overlap with *Maine State.* Meiers Decl., Ex. H. In fact, as Plaintiff points out, this case is more related to the other Federal Home Loan Bank cases filed in Illinois and Washington state courts than it is to the *Maine State* litigation in this Court.

Finally, the Plaintiff's right to a jury trial was not an important factor in *Stichting* because Defendants had already argued *against* transfer to the bankruptcy court, and a jury trial is guaranteed in this Court. Here, however, Defendants have made no such commitment to keep the case in this Court as opposed to transferring the case to the Delaware bankruptcy court. Plaintiff's right to a jury trial is in itself a reason to grant equitable remand. *See FHLB of Seattle v. Deutsche Bank Secs., Inc.,* 736 F.Supp.2d at 1290–91 ("Courts have granted equitable remand solely on the basis of a party's entitlement to a jury trial when that party's action was not a 'core proceeding.' ").

---

**4.** The Court notes that the Securities Act claims are expressly non-removable under Section 22(a) of the Act. 15 U.S.C. § 77v(a).

Thus, the federal claims cannot serve as a basis for federal jurisdiction.

For all of these reasons, the Court finds equitable remand appropriate.

## B. THE BANK'S CHARTER DOES NOT CREATE SUBJECT MATTER JURISDICTION.

The FHLB charter empowers each Bank's directors "to sue and be sued, to complain and to defend, in any court of competent jurisdiction, State or Federal." 12 U.S.C. § 1432(a). Defendants contend that the charter itself confers jurisdiction on the district courts. For the same reasons that fourteen out of fifteen federal courts have rejected Defendants' argument, this Court holds that the Federal Home Loan Bank's charter does not create federal subject matter jurisdiction. *See, e.g., FHLB Seattle,* 736 F.Supp.2d at 1285–86; *FHLB Chicago,* 2011 WL 151842, at *1–3; *FHLB San Francisco,* 2010 WL 5394742, at *6–8; *FHLB Pittsburgh,* 2009 WL 5178904, at *4. There must be an independent basis for federal subject matter jurisdiction before a federal court is a "court of competent jurisdiction" in which the FHLB may sue and be sued.

## III. CONCLUSION

The Court holds the Federal Home Loan Bank's charter does not create subject matter jurisdiction. The Court holds it does have "related to" bankruptcy jurisdiction over this action, but chooses to equitably remand the case to state court. The motion to remand is therefore **GRANTED.**

**IT IS SO ORDERED.**